**CASE NO. 22-5957**

**UNITED STATES COURT OF APPEALS**

**FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,          PLAINTIFF-APPELLEE**

**v.**

**RONALD STINESPRING,                    DEFENDANT-APPELLANT**

_____

**APPEAL FROM THE**

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF KENTUCKY**

_____

**BRIEF IN SUPPORT OF MOTION**

**TO WITHDRAW AS COUNSEL**

**/s/Paul Neel_____**

**8203 Flicker Place**

**Louisville, KY 40214**

**Counsel for Appellant**

# TABLE OF CONTENTS

Table of Cases, Statutes, and Rules ........................................................................ ii

Introduction ................................................................................................................ 1

Statement of Subject Matter and Appellate Jurisdiction ........................................ 1

Statement of the Case ................................................................................................ 2

Statement of the Facts .............................................................................................. 3

ISSUES THAT MIGHT ARGUABLY SUPPORT THE APPEAL ....................... 6

A. Appellant Could Argue That the Suppression of Search Warrant Motion Should
Have Been Granted ................................................................................................... 6

    1. Standard of Review ........................................................................................ 6

    2. Raising the Issue ............................................................................................ 9

    3. Discussion ..................................................................................................... 10

B. Appellant Could Argue That He Did Not Plead Guilty Knowingly, Intelligently
and Voluntarily. ....................................................................................................... 20

C. Appellant Could Argue That His Sentence Was Unreasonable ........................ 30

    1. Procedural Reasonableness .......................................................................... 30

    2. Substantive Reasonableness ......................................................................... 39

D. APPELLANT COULD ARGUE INEFFECTIVE ASSISTANCE OF
COUNSEL. .............................................................................................................. 42

E. APPELLANT COULD ARGUE THAT HE WAS NOT COMPETENT ......... 42

    1.Standard of review ........................................................................................ 43

    2. Raising the issue ........................................................................................... 43

    3. Discussion ..................................................................................................... 44

Conclusion ............................................................................................................... 47

Statement of compliance with FRAP 32(a) (7) ...................................................... 47

Certificate of Service ............................................................................................... 47

APPELLANT'S DESIGNATION OF DISTRICT COURT DOCUMENTS ........ 48

# Table of Cases, Statutes, and Rules

**Federal Cases**

*Anders v. California*, 368 US 738 (1967) .................................................................51

*Anders v. California*, 386 US 738 (1967) ...................................................................5

*Blackledge v. Allison*, 431 U.S. 63(1977) ..............................................................26

*Boykin v. Alabama,* 395 US 238 (1969). ................................................................25

*Boykin v. Alabama,* 395 US 238 (1969). ................................................................25

*Brady v. United States*, 397 U.S. 742 (1970) ..........................................................26

*Brady v. United States*, 397 US 742 (1970) ..................................................... 25, 33

*Brady v. United States*, 397 US 742 (1970). ...........................................................25

*Henderson v. Morgan*, 426 US 637 (1976) ............................................................25

*Henderson v. Morgan*, 426 US 637 (1976). ...........................................................25

*Illinois v. Gates*, 462 U.S. 213 (1983) ...................................................................11

*Illinois v. Krull* 480 US 340 (1987) ......................................................................19

*King v.Dutton*, 17 F. 3d 151 (6th Cir. 1994 ........................................................25

*King v.Dutton*, 17 F. 3d 151 (6th Cir. 1994). ......................................................25

*Peffer v. Stephens*, 880 F.3d 256 (6th Cir. 2018) ..................................................11

*Strickland v. Washington*, 466 US 668 (1984). ......................................................46

*U.S. v. Stead*, 746 F.2d 355 (6th Cir. 1984) ..........................................................27

*United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) ............................................12

*United States v. Baker*, 559 F. 443 (6th Cir. 2009) .............................................45

*United States v. Bell*, 350 F.3d 534 (6th Cir. 2003) ..............................................49

*United States v. Bowers*, 615 F.3d 715 (6th Cir. 2010) ...........................................6

*United States v. Brown*, 828 F.3d 375 (6th Cir. 2016) ..........................................19

*United States v. Catchings*, 708 F.3d 710 (6th Cir. 2013) .....................................26

*United States v. Clayton,* 937 F.3d 630 (6th Cir. 2019) .........................................43

*United States v. Cunningham* 669 F. 3d, 723 (6th Cir. 2012). .............................34

*United States v. Denkins*, 367 F.3d 537 (6th Cir. 2004) ........................................50

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) .......................................27

*United States v. Dubrule*, 822 F.3d 866 (6th Cir. 2016) .........................................47

*United States v. Greco,* 734 F.3d 441 (6th Cir. 2013) ...........................................43

*United States v. Grubbs*, 773 F.3d 726 (6th Cir. 2014) ..........................................47

*United States v. Herrera*, 265 F.3d 349 (6th Cir. 2001) .........................................24

*United States v. Hines*, 885 F.3d 919 (6th Cir. 2018)................................................12

*United States v. Hobbs*, 953 F.3d 853 (6th Cir. 2020)...........................................27

*United States v. Hood*, 827 Fed.Appx. 524 (6th Cir. 2020) ...................................48

*United States v. Howard*, 644 F.3d 455 (6th Cir. 2011) ..........................................6

*United States v. Hymes,* 19 F.4th 928 (6th Cir. 2021) ............................................44

*United States v. Laughton* 409 F. 3d 744 (6th Cir. 2005). ......................................20

*United States v. Laughton*, 409 F.3d 744 (6th Cir. 2005)......................................19

*United States v. Leon*, 468 U.S. 897 (1984) ........................................................13

*United States v. Leon,* 468 US 897 (1984) ...........................................................19

*United States v. Lopez- Medina*, 460 F. 3d 724 (6th Cir. 2006) ..............................47

*United States v. McCarty*, 628 F.3d 284 (6th Cir. 2010)........................................51

*United States v. Moorehead*, 912 F.3d 963(6th Cir. 2019).....................................12

*United States v. Olano*, 507 U.S.725(1993) ........................................................50

*United States v. Ormsby,* 252 F.3d 844 (6th Cir. 2001 ...........................................49

*United States v. Ormsby,* 252 F.3d 844 (6th Cir. 2001) .........................................24

*United States v. Presley*, 18 F.4th 899 (6th Cir. 2021).........................................27

*United States v. Rayyan*, 885 F.3d 436 (6th Circuit. 2018). ..................................35

*United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018) .........................................44

*United States v. Sheckles*, 996 F.3d 330(6th Cir. 2021) .......................................12

*United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018)............................................12

*United States v. Turner at all*, 272 F. 3d 380 (6th Cir. 2001) ................................23

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) .........................................27

*United States v. Walden*, 625 F. 3d 961(6th Cir. 2010)..........................................47

*United States v. Webb*, 403 F.3d 373 (6th Cir. 2005)...........................................25

*United States v. White*, 874 F.3d 490 (6th Cir. 2017)...........................................22

*United States v. Zabel,* 35 F.4th 493 (6th Cir. 2022)...........................................24

*Warden v. Hayden*, 387 U.S. 294 (1967)...........................................................13

**Statutes**

18 USC §1512 (b). .......................................................................................6

18 USC 3231 and §3582 (c) (2)......................................................................7

USC §3742 ..................................................................................................7

18 USC §2251 (a) ......................................................................................6, 7

18 USC §2252 (a) (4) (B) ............................................................................6, 7

18 USC §3553 ...........................................................................................32

USSG §2G2 .2 .........................................................................................32

18 USC §3553 (a), ..................................................................................36

USSG §3A1.3 ..........................................................................................36

USSG §3C1.1 ..........................................................................................36

USSG §1B 1.3 ..........................................................................................37

USSG §1B13 ...........................................................................................38

USSG §2 G2 .1 (b) (2) (A) ......................................................................39

USSG §2 G2 .1 (b) (1) (A) ......................................................................39

USSG §2 G2 .1 (b) (5). ............................................................................39

USSG §3D 1.2 (c) ....................................................................................39

USSG §2 G2 .1 (b) (1) (B). ......................................................................40

USSG §2G2.1(b)(5) .................................................................................40

USG §3D 1.4 (a), (b) and (c) ...................................................................41

USSG §3D 1.4 .........................................................................................41

USSG §3D1.2(c) ......................................................................................41

USSG §4B 1.5 (a) ....................................................................................41

18 USC §3583(k) .....................................................................................42

USC §2251 (e) .........................................................................................42

USSG §3E1.1 (a) .....................................................................................42

USSG §5G 1.1 (a) ....................................................................................42

18 USC §3553 (a) ....................................................................................43

18 USC §3583 (k) ....................................................................................43

18 USC §3553 (a) ....................................................................................45

18 USC §2251 (e) ....................................................................................46

18 USC §2255 ..........................................................................................47

28 USC §2255 ..........................................................................................48

18 USC §4241 (b) ....................................................................................49

USSG §2 G2 .1 ............................................................................... 32, 39

USSG §3C 1.1 ................................................................................. 38, 39

USSG §3A 1.3 ................................................................................. 38, 40

18 USC §2252 (b) (2) ..................................................................... 42, 46

18 USC §1512 (b) (1) .................................................................. 7, 42, 46

**Rules**

Sixth Circuit Rule 101 (f) ...................................................................6

R. 108 Page ID #509-517...................................................................7

R.109, Page ID #518-519...................................................................7

Federal rule of Criminal Procedure 11 (a) (2) ...............................25

Fed. R. Crim. P. 11(b) (1)(C), (G) .................................................26

Fed. R. Crim. P. 11(b) (2) ...............................................................26

Federal Rule of Criminal Procedure 11(b) .....................................26

6 Cir. R. 101 (f)..............................................................................52

## Introduction

This case presents no non-frivolous issues for consideration on appeal. Accordingly, this brief is filed in conformance with *Anders v. California*, 386 US 738 (1967) and Sixth Circuit Rule 101 (f).

## Statement of Subject Matter and Appellate Jurisdiction

This is an appeal from a final order entered in a criminal case on October 21, 2022 after a plea of guilty on charges of Production of Visual Depictions Involving Minors Engaged in Sexually Explicit Conduct (18 USC §2251 (a) (three counts); Possession of Matter Containing Visual Depictions of Minors Engaged in Sexually Explicit Conduct (18 USC §2252 (a) (4) (B); and Tampering with a Witness (18 USC §1512 (b). (Record, (hereinafter R.) 108, Amended Judgment upon Verdict of Guilty, Page ID 509-517). The District Court had original jurisdiction pursuant to 18 USC 3231 and §3582 (c) (2). This Court has jurisdiction of this appeal pursuant to 18 USC §3742. *See United States v. Bowers*, 615 F.3d 715, 722 (6th Cir. 2010) and *United States v. Howard*, 644 F.3d 455, 458 (6th Cir. 2011). On October 21, 2022 the District Court entered an order of Amended Judgment Upon Verdict of Guilty. (R. 108 Page ID #509-517). Notice of Appeal was filed on October 20, 2022 (R.109, Page ID #518-519).

## Statement of the Case

A Second Superseding Indictment returned on May 5, 2022 charged that on or about October 17, 2017, September 19, 2018, and from 2016, exact dates unknown through 2018, exact dates unknown in the Eastern District of Kentucky appellant, Ronald Stinespring Coerced a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing Visual Depictions of that Conduct in violation of 18 USC §2251 (a) (3 counts). Count 4 charged that on or about March 1, 2019 in the Eastern District of Kentucky Mr. Stinespring Knowingly Possessed Matter Containing Visual Depictions of a Minor Engaged in Sexually Explicit Conduct Transported in and Affecting Interstate Commerce, in violation of 18 USC §2252 (a) (4) (B). Count 5 charged that on or about December, 2021 continued through January, 2022 in the Eastern District of Kentucky, Mr. Stinespring Knowingly Attempted to Corruptly Persuade with Intent to Influence Testimony in a Federal Criminal Trial in violation of 18 USC §1512 (b) (1).

On May 27, 2022 Mr. Stinespring entered a plea of guilty to Counts 1-5 of the Second Superseding Indictment. (R. 81, Page ID #426-431); (Rearrangement, R. 90, Page ID #452). There was no plea agreement with the government.

Appellant's sentencing hearing occurred on October 17, 2022. By Guidelines, Mr. Stinespring faced life in prison. This exceeded the statutory limit

for incarceration. Pursuant to statute, he was sentenced to 1200 months. (Amended Judgment upon a Plea of Guilty, R. 108, Page ID #509-517)

## Statement of the Facts

Ronald Stinespring adopted three young girls with his wife. He lived off the grid in a cabin in Elliot County, Kentucky far from the nearest road and deep in the woods. At the time of the occurrence of the actions that led to his conviction one of the daughters was 18, one was between 12 and 17 and one was under 12. Police were called to a location in Elliot County and found the youngest girl wandering about. They described her as dirty, bedraggled and smelling badly. She provided information to them that made no sense. Eventually they learned that she was living with Mr. Stinespring and her two sisters. She told them that Mr. Stinespring would sometimes use a Taser on her after he tied her up and put her in water. Authorities believe her condition indicated potential criminal activity, including neglect. They procured a search warrant and proceeded to the cabin, located over a mile into the woods, with roadblocks between the cabin and the main road. Late in the afternoon the police arrived and the cabin in disarray occupied by the two other daughters as well as Mr. Stinespring, who attempted to flee. After securing him, the authorities began searching the cabin. The cabin had no electricity other than from solar panels, and as night fell the search was called off due to darkness until

the next day. The police believed that a further search of the cabin would provide evidence of neglect or child negligence.

The next day the authorities returned and found birth control, pregnancy tests and a fetal Doppler in the cabin. They also found a flashlight stun gun that was located where the young girl had previously said it would be. Since they believed that only Mr. Stinespring and the three young girls lived at the cabin they suspected possible sexual abuse. Thereafter, they found hard drives at the cabin. They sought and received another search warrant. That search warrant resulted in the discovery of a number of items (cameras, cell phones) that indicated potential sexual crimes. Yet another search warrant was issued in order for those items to be forensically searched. Those searches yielded visual evidence of torture and sexual abuse of the three young girls as well as other sexual material downloaded from the Internet. (R.31, Suppression Hearing, Page ID# 144-159, 169, 171, 174-194). Forensics on the electronics yielded findings of child sexual abuse and exploitation. (R.31, Suppression Hearing, Page ID# 201).

While in jail awaiting disposition of his case Mr. Stinespring sent a coded written message to his oldest daughter urging her to falsely accept responsibility for the criminal activity for which he was charged. The message was discovered by the authorities, which resulted in the fifth charge. (R.125, Sentencing Hearing, Page ID #-6 73-6 79).

4

A hearing to suppress the items found in the cabin pursuant to the second search warrant was held on May 21, 2022. The Court overruled the Motion to Suppress, noting that there was a presence of a minimally sufficient nexus between Stinespring's abuse of the minor victim and his electronic devices, and a good faith exception. (R. 38, Court Ruling, Page ID #273).

There was a competency hearing in the case. The Motion for Order of Competency to Stand Trial was granted by the court. (Document #74, Status Conference, Page ID #401). The Forensic Psychological Report regarding Competency found Mr. Stinespring competent to stand trial. (R. 80, Page ID #425.) (Sealed). At the Competency Hearing the defense stated there was no evidence to present, and the defense did not challenge the forensic psychological report regarding competency. (R. 123, Page ID #642). Based upon the evaluation, the court found Mr. Stinespring competent to stand trial. (R. 79, Competency Ruling, Page ID #415).

On May 27, 2022 Mr. Stinespring pled guilty, unconditionally, without a plea agreement. He was advised by the Court that an unconditional guilty plea waived suppression issues. (Document.31 Rearrangement Hearing, Page ID# 666-667). His attorney stated that he had met with Mr. Stinespring quite a few times since an earlier competency hearing and Mr. Stinespring was competent, rational and understood what was occurring. Mr. Stinespring said he was in the right frame

of mind and the United States stated it felt he was definitely competent. (Document.31 Rearrangement Hearing, Page ID# 666-671).

Mr. Stinespring reviewed with the Court each of the 5 counts and the forfeiture count of the second superseding indictment he was pleading to. He also acknowledged to the Court the statutory punishment each individual count carried. The Court discussed at length the Sentencing Guidelines, enhancements, and grouping rules. The AUSA stated that it was clear the defendant's guidelines were likely to be life. Mr. Stinespring stated that he understood this. (R.31 Rearrangement Hearing, Document, Page ID# 671-679; 683-692).

At the sentencing hearing the advisory guidelines exceeded the statutory maximum. The statutory sentence imposed was 1200 months

The Amended Judgment in a Criminal Case was entered October 21, 2022. (R. 108), Page ID #509-517). Notice of Appeal was filed on October 28, 2022 (R. 109, Page ID #518-519). Further facts will be developed in the body of the appeal.

## ISSUES THAT MIGHT ARGUABLY SUPPORT THE APPEAL

### A. Appellant Could Argue That the Suppression of Search Warrant Motion Should Have Been Granted

#### 1. Standard of Review

The Fourth Amendment to the Constitution requires that a search warrant may not issue without a finding of probable cause. Probable cause exists where "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). A finding of probable cause does not require certainty or a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983), but instead the magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. The review of the District Court decision is de novo and the review of probable cause itself is more deferential. See *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018). "The court reviewing a warrant does not write on a blank slate. A judicial officer who issues a warrant 'should be paid great deference.'" Id. (quoting *Gates*, 462 U.S. at 236). The magistrate needed a "substantial basis for . . . concluding that probable cause existed" based on the "totality of the circumstances." *Gates*, 462 U.S. at 236, 238. A denial of a motion to suppress will be upheld "if the district court's conclusion can be justified for any

reason." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quoting

*United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)).


The Sixth Circuit analyzes a district court's factual findings in its ruling on a

motion to suppress for clear error "and its legal determinations-including whether

probable cause existed-de novo." *United States v. Hines*, 885 F.3d 919, 924 (6th

Cir. 2018). "Moreover, "we give 'great deference' to the state judge's initial

probable-cause conclusion when issuing the warrant, asking merely whether the

judge had a 'substantial basis' for that conclusion." *United States v. Sheckles*, 996

F.3d 330, 337-38 (6th Cir. 2021), cert. denied, 142 S. Ct. 717 (2021) (quoting first

*Hines*, 885 F.3d at 924, then *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.

2000) (en banc)) (citations omitted).


To deter police misconduct, the exclusionary rule bars the introduction

of evidence obtained in violation of the Fourth Amendment. *Warden v. Hayden*,

387 U.S. 294, 304-05 (1967). Even if the magistrate judge did not have a

substantial basis for finding probable cause, suppression is not appropriate where

executing officers relied on the search warrant in good faith. *United States v. Leon*,

468 U.S. 897, 922-23 (1984) (establishing the good-faith exception to the

exclusionary rule).

## 2. Raising the Issue

A Motion to Suppress the second affidavit and search warrant, which turned up the hard drives and other indicia of sexual abuse of a minor, was filed. (R. 19, Page ID #60-80). The Report and Recommendation of the United States Magistrate (Doc. # 34), recommended that the Court deny Stinespring's Motion to Suppress (Doc. # 19). Defendant Stinespring filed Objections (Doc. # 35), and the United States filed a Response to his Objections (Doc. # 37). The District Court adopted the Magistrate's Report and Recommendations as modified (Document 38 Page ID #262-275).

Throughout the case five search warrants were issued. Only the second warrant was in contention. The Motion to Suppress argued that the second affidavit and search warrant for the cabin should be suppressed. (R. 19, Page ID #60-80). The first warrant, issued on March 1, 2019, was in relation to Mr. Stinespring's residence. At that time because of the disheveled and dirty condition the youngest daughter was found in, there was a concern that perhaps a criminal abuse or neglect charge may be issued against Mr. Stinespring. (Supra). The affidavit for the second search warrant stated:

"The following personal property to wit: taking a video recording of the vile living conditions at the above residence, to document child abuse and neglect. Any and all property that can and could be used in committing the offense of criminal abuse to cause harm or injury to another person, or torture limited but not limited

to para cord rope or any binding material. Any and all electronic devices limited but not limited to computers, cell phones, tablets Wi-Fi connection devices in order to prove continual residence at the above residence. (Affidavit for second search warrant, Document 19-2 Page ID #68).

The second warrant was issued referencing the original warrant, stating that due to no lighting in the residence the trooper was unable to document living conditions but there was a computer and cell phone at the residence that may contain evidence of child abuse and continual residence at the property. (Document 19 – 2, Page ID #70. (There had allegedly been a contention the family had just recently moved to the cabin.).

Mr. Stinespring entered an unconditional guilty plea, thus waiving the issue regarding suppression of the fruits of the second warrant. (See Argument b below).

### 3. Discussion

**a. The Warrant**

The Motion to Suppress challenged the legality of Warrant 2, which formed the basis for the child sex offenses brought against Mr. Stinespring. The motion argued that the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable". The search recovered pursuant to Warrant 2 included electronic devices 2 cell phones, 2 computers, 1 tablet, 14 large internal hard drives, 1 Large External Hard Drive, 9 small external hard drives, 1 Small Internal Hard drive, 1 computer motherboard,

and 2 Sim cards. (R #19 at 2, 19-2 at 3, and 23-3 at 2). Also seized were an ultrasound fetal Doppler, pregnancy tests, and birth control pills.

Three more search warrants related to the electronic evidence were issued. (R. #23-3-23-5). The third warrant permitted a search of the electronic items seized in Warrant 2 for evidence of child pornography, human trafficking, or physical or sexual abuse. (R. #23-3 at 1). The fourth warrant permitted a further search of the electronic items (R. #23-4 at 4-5). The fifth Warrant authorized another search of the Stinespring residence and authorized confiscation of cameras or electronic items capable of storing photographs after two minor victims disclosed that Stinespring had taken sexual pictures of them. (R. #23-5 at 1-2).

A suppression hearing regarding the second search warrant was held on May 21, 2021.Trooper Tanner Johnson of the Kentucky State police testified in response to a citizen's telephone call they found a juvenile who stated she was living in Elliott County and her father was Ronald Stinespring. She informed the authorities that he occasionally tased her with a flashlight stun gun and would tie her up and pour water on top of her and continue to tase her feet and armpits and genitals. She had scars on her feet from the tasers. After procuring a search warrant, the police came to a makeshift cabin where they found Mr. Stinespring and his oldest and youngest daughter. Stinespring attempted to flee but was

subdued. The cabin was a dirt floor and was in disarray. (R. #31, Page ID #144-158).

Darkness fell and there were no lights in the cabin. Some of the family had alleged that they had lived there only a short while. In order to further search the cabin to find evidence regarding abuse and to find evidence that the family had been living there for a lengthy period, a second warrant was obtained. Although not stated in the warrant Trooper Johnson testified that the primary reason for returning to continue the search was the loss of light during the first search. (R. #31, Page ID #169). Trooper Johnson stated that he had heard Facebook may have messages that would disprove what the family had said and give credibility to what the youngest girl was telling him. He had learned there may be a computer and cell phone that may contain evidence of child abuse and continual residence at the property. The phone had points of contact between the youngest daughter and her biological mother. This would prove that the youngest daughter had resided in the cabin, not with her biological mother. (R. #31, Suppression Hearing- Johnson Testimony, Page ID # 148-154). During the second search birth control items and a fetal Doppler were found. (A fetal Doppler is a test that uses sound waves to check a baby's heartbeat. It is a type of ultrasound that uses a handheld device to detect changes in movement that are translated as sound). (R. 31, Suppression Hearing, Page ID #155).

Officer Justin Flannery's testimony was similar to Johnson's. He stated that when he saw the youngest daughter originally she was very dirty and had a nasty stench. He also testified that the young girl claimed that she received punishment from Stinespring by having a flashlight stun gun shock the top of her feet, and if she moved she was to stand in water and then be shocked. Flannery stated that this would constitute evidence of a crime, and based upon that the police obtained an arrest warrant and search warrant of the residence for criminal child abuse. He said that Stinespring's son claimed to other officers that the youngest girl had only recently been at the cabin. (Flannery Testimony, R. 31, Page ID #174-184).

Upon arriving at the cabin Flannery recounted that Stinespring attempted to flee. He was taken into custody. Due to darkness, making a further search impossible, Flannery testified the authorities had to leave. He stated he wanted to come back the next day to video the cabin to show how the children were forced to live, an important item in a negligence investigation. He also wanted to find the phone and computer which allegedly had been used to contact the children's biological mother in Ohio which would show continuous residence. (R. 31, Page ID #185).

In the daylight the next day two flashlight stun guns were found exactly where the youngest daughter stated they would be.  Flannery observed birth control, pregnancy tests, and a fetal Doppler at the cabin. He became concerned

because in talking to the first daughter she indicated that Stinespring and the three daughters were the only people that resided in the cabin. Flannery then discovered a box of hard drives he had not seen previously. Aware of the physical abuse and finding items that may have been used in sexual abuse, he seized them. (R. 31, Page ID #185-188).

The United States response to the defense Motion to Suppress conceded that Search Warrant 2 lacked a nexus to establish probable cause for the seizure of electronic items taken from the home. (Response of United States to Motion to Suppress, R. 23, Page ID #89). The United States argued that the evidence seized pursuant to Search Warrant 2 should not be suppressed because the officers acted in good faith upon reliance on the approval of the warrant by a judge and would the items seized would have been inevitably seized as a result of Search Warrant 5, which included information establishing a nexus between the items of electronic evidence and criminal conduct and was supported by probable cause.

Stinespring's motion argued the affidavit and warrant "failed to establish an actual nexus between the allegations of physical abuse [and] electronic devices seized." (Doc. # 35 at 6). The United States was required to show was that the affidavit contains "'some connection, regardless of how remote it may have been'… 'between the criminal activity at issue and the place to be searched,'" Id. (quoting *United States v. Laughton*, 409 F.3d 744, 749-50 (6th Cir. 2005)). As long

as some connection is established, "then … official reliance on it is reasonable." *Id.*

The District Court found such a connection also cited the *Leon* good-faith exception in overruling Stinespring's objection (R. #35) to the magistrate's report and recommendation and Stinespring's Motion to Suppress (R. #19) was denied. (R. #38, Page ID #274).

Generally, evidence obtained in violation of the Fourth Amendment is excluded. *Illinois v. Krull* 480 US 340, 347 (1987). However, "(T) he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon,* 468 US 897, 921-22 (1984).

The *Leon* good faith exception allows for evidence "'obtained in objectively reasonable reliance' on a 'subsequently invalidated search warrant'" to be saved from suppression. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)).

Reviewing the affidavit underlying Warrant 2 to determine whether it lacked indicia of probable cause revealed:

On the first day of March 2019 a search warrant (warrant 1) was conducted at this residence and due to the location and the limited daylight hours and no lighting in the residence I was unable to document the living conditions. It was discovered after leaving the residence while conducting interviews that there was a computer and a cell phone at the residence that may contain evidence of child abuse and continual residence at the property. (Document #19-2 at 2).

There was also a description of an interview with the youngest daughter who said that for two years she had lived at the property with her two sisters and that she had never left the property, and she was physically abused by the defendant in a number of ways. (R. #19-2 at 2). In context, the United States had to show that the affidavit contained "some connection, regardless of how remote it may have been… between the criminal activity at issue and the place to be searched." *United States v. Laughton* 409 F. 3d 744, 749-50 (6th Cir. 2005).

There was a connection between the criminal activity at issue and the place to be searched. There were interviews indicating there was a computer and cell phone at the residence that potentially contained evidence of child abuse; the youngest daughter's statement she had been staying at the residence for the last two years contrasted to claims by other family members of recent residency, and her statements regarding physical abuse by Stinespring, specifically tying her up, tasering her in her feet and arms and striking her with a wood board. This was a clear connection to "the criminal activity at issue and the place to be searched". It exceeded the "modicum of evidence connecting the criminal activity in the affidavit to the place to be searched, which is required by *Laughton*.

Regarding the good-faith exception, *Leon* at 923 (supra) noted that an officer's reliance on an invalid warrant cannot be considered objectively reasonable and does not meet the good-faith exception in four instances:

1) The issuer of the warrant was misled by information in the affidavit the affiant knew was false or would have known except for their reckless disregard for the truth.

2) The issuing magistrate wholly abandoned their judicial role.

3) The warrant based on an affidavit is so lacking in indicia of probable cause it renders official belief in its existence entirely unreasonable.

4) The warrant is so facially deficient such as failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

Stinespring's Motion to Suppress only relied upon the third of four above instances to the *Leon* good faith exception. However, the suppression hearing and the affidavit for the warrant provided evidence of a connection between Mr. Stinespring's criminal activity and the various electronic devices. One of the daughters had stated she had been physically abused including being shocked by a Taser and struck by a piece of lumber, and that she had lived at that location for two years. All of this showed a "modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749. The warrant contains a minimally sufficient nexus between the illegal activity and the place to be searched. (Doc. # 34 at 12).

Evidence found by a police officer through a search warrant should not be suppressed since this would penalize the officer for the judicial error instead of his own error. This would not contribute to the deterrence of Fourth Amendment violations. *Leon,* 468 U.S. at 921. Ultimately, suppression in this instance would occur only in instances where the police operated in deliberate, reckless or grossly negligent disregard for the Fourth Amendment. *United States v. White*, 874 F.3d 490, 500 (6th Cir. 2017).

Neither the suppression hearing nor the warrant indicated deliberate, reckless or grossly negligent disregard for the Fourth Amendment in any way. A review of the evidence indicates that the good-faith exception applied in this case and the search was in accord with the Fourth Amendment.

**b. Unconditional Guilty Plea**

Mr. Stinespring entered an unconditional, unwritten guilty plea. He informed the court that it was his "intention to enter a plea without benefit of the plea agreement." (Document #125, Rearraignment, Page ID #666). During the entry of the plea he was advised by the court that he was waving the suppression issue.

Court: I advise you, Rule 11 of the Federal Rules Of Criminal Procedure that governs guilty pleas indicates that a defendant may plead guilty, not guilty, or nolo contendere. You are pleading guilty. There was a denial to suppress.
Defense Attorney: "I went over that with him…"

Court: "There will be no appeal by you of the court's prior denial of the motion to suppress that were previously adjudicated. Do you understand that?

Stinespring: "Yes Sir".

Court: "There was a recent Sixth Circuit decision involving a case out of the Western District of Kentucky that reaffirmed the idea that when someone wishes to have conditional plea preserving the right to appeal the denial of a pretrial motion, that has to be in writing."

Court:"I just wanted to make sure you understood that. That's something I want to be crystal clear that while you may be able to appeal whatever sentence the court imposes or any application of the guidelines, you're not going to be permitted to appeal the denial of the writing to suppress because you're not doing so in writing. Do you understand that?"

Defendant: Yes. I have talked to my lawyer about that. (R. 125, Rearraignment, Page ID #666-667).

Court: And the case I mentioned was *US v. Zabel.* Z-A-B-E-L. It's the case from last week involving the Rule 11. I wanted to put that on the record. (R. #125 Rearraignment, Page ID # 671).


An unconditional guilty plea waives all nonjurisdictional defenses a

challenge to a conviction. *United States v. Turner at all*, 272 F. 3d 380 (6th Cir.

2001).

Additionally, Stinespring's unconditional plea was not written. Even if it

were somehow considered "conditional" it could not be considered at the appellate

level. "It is important to note in passing that the plea agreement made under

subparagraph (e) of Rule 11 need not be in writing, although a written agreement is

the preferred practice. Conditional guilty pleas, however, represent an exception to

the general rule that a guilty plea waives all non-jurisdictional defects in the pre-

plea proceedings. See *United States v. Ormsby,* 252 F.3d 844, 848 (6th Cir. 2001). Accordingly, this "special" plea carries with it the special requirement that it be "in writing" so that a precise record can be made both of the fact of the government's consent and the "specified pretrial motion," Rule 11(a) (2), which the defendant reserves the right to challenge." "(It) is elemental that the guilty pleading defendant may not appeal an adverse pre-plea suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty in compliance with (Federal rule of Criminal Procedure) 11 (a) (2)" *United States v. Herrera*, 265 F.3d 349, 351-352. (6th Cir. 2001). "The problem with Zabel is that he did not have a plea agreement in this case, and there is no evidence in the record of any writing preserving his right to appeal the District Court's suppression ruling." *United States v. Zabel,* 35 F.4th 493, 501 (6th Cir. 2022).

Thus, even had the Suppression Motion denial been erroneous the error was waived regarding appeal by the guilty plea and also the failure to file a written conditional plea of guilt.

## B. Appellant Could Argue That He Did Not Plead Guilty Knowingly, Intelligently and Voluntarily.

The standard for determining the validity of a guilty plea is whether the plea represents a knowing, voluntary, and intelligent choice among the alternative courses of action open to the defendant. See *Boykin v. Alabama,* 395 US 238, 242

(1969). A plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 US 742, 747 (1970). A constitutionally valid plea requires that the defendant be informed of the elements of the crime. *Henderson v. Morgan*, 426 US 637, 645 (1976). Determining whether a plea is made voluntarily requires an evaluation of all the relevant circumstances surrounding the plea. *King v. Dutton*, 17 F. 3d 151, 153 (6th Cir. 1994). The "ultimate question" is whether the plea is voluntary and intelligent.

To ensure that defendants have knowingly and voluntarily pleaded guilty, Federal Rule of Criminal Procedure 11(b) requires a district court to ask them a variety of questions. See *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005). For example, defendants must acknowledge that they know about the constitutional "right to a jury trial," the "nature of each" offense to which they are pleading guilty, and the "maximum possible penalty" for their offenses. Fed. R. Crim. P. 11(b) (1)(C), (G), (H). The Court must also ask defendants whether their "plea is voluntary" and not the result of coercive tactics. Fed. R. Crim. P. 11(b) (2). When a defendant's answers to these questions show that the defendant has knowingly and voluntarily pleaded guilty, the transcript of the plea hearing will provide a "formidable barrier" to attempts to challenge the knowing and voluntary nature of the plea after the fact. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Under the Fifth Amendment, any waiver of "constitutional rights" in a criminal proceeding "not only must be voluntary," but it also "must be [a] knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The questions and answers required by Criminal Rule 11 customarily satisfy the *Brady* (Supra) imperatives. When properly done, a plea colloquy permits the court to confirm "that the defendant is pleading voluntarily and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (quotation omitted).

Because Stinespring did not object to the plea process below (other than to objections to the PSR) (infra), the stringencies of plain-error review apply to his appeal. *United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021); *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020). They demand that he show (1) an error, (2) that was "obvious or clear," and (3) that "affected [his] substantial rights." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quotation omitted). In this setting, an error affects substantial rights only where defendants show a reasonable probability that they would not have pleaded guilty.

*United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); see *Hobbs*, 953 F.3d at 857 (Supra).

"In 1983, Congress enacted subdivision (h) of Rule 11. This amendment incorporates the harmless error standard of Rule 52(a) of the Federal Rules of Criminal Procedure into Rule 11. Consequently, a guilty plea entered pursuant to Rule 11 will now be reversed only where the trial court, in accepting the guilty plea, violates a substantial right of the criminal defendant." *U.S. v. Stead*, 746 F.2d 355, 356 (6th Cir. 1984)

In this case, as shown below, Mr. Stinespring knowingly, intelligently and voluntarily entered his guilty plea and waved his constitutional rights.

At the Change of Plea Hearing Mr. Stinespring entered a plea of guilty to five counts of the second superseding indictment. (Change of Plea, R. 125 page ID #663 et seq.). There was no written plea agreement. Mr. Stinespring was alert and clear and was able to communicate and engage with his attorney. He stated to the Court that it was his intention to enter a plea without benefit of the plea agreement. When the Court advised him that his guilty plea indicated that there would be no appeal by him of the court's prior denial of the motion to suppress he stated that he understood this. His defense attorney added that he had gone over this with Mr. Stinespring. (R. 125, Change of Plea, Page ID #664).

Stinespring informed the Court that he was 52 years old and had achieved close to an associate degree and that he was in the right frame of mind. His defense attorney added that he had met with Stinespring quite a few times and that he was competent, rational and understood what he was doing at the hearing. The defense attorney stated that he had reviewed and summarized the discovery with Mr. Stinespring and Mr. Stinespring verbally agreed with his attorney's statement. Stinespring also agreed that the decision he was making to plead guilty was not the attorney's or prosecutor' s decision but rather his alone and it was his decision to plead guilty to the second superseding indictment. (Change of Plea, R. 125, Page ID 667-669).

Stinespring additionally told the court that he understood there was no plea agreement or any agreement with anyone else regarding his guilty plea. The Court then informed him that the second superseding indictment had five counts and a count involving forfeiture. Thereafter, the Court reviewed each individual count with Mr. Stinespring, including the forfeiture, and Mr. Stinespring affirmatively stated that he understood each count and that he was pleading guilty to all counts. His attorney also stated on the record that he had reviewed the counts and statutory penalties with Mr. Stinespring. (R. 125, Change of Plea, Page ID 670-678).

Responding to the Court, Stinespring stated that he was satisfied with the advice and representation of his attorney. He told the court that he was aware that

even at this juncture in the case he could have a trial if he wanted one. The Court explained that at a trial a defendant is presumed innocent on all counts and could have his attorney question potential jurors. which would result in seating a panel of jurors from which 12 would be selected for the regular jury and the remainder as the alternatives.

Stinespring was advised by the Court that he would be presumed innocent and he was told that the United States would have to prove his guilt by competent evidence beyond a reasonable doubt before he could be found guilty. Additionally, he was told that he would have the right to counsel throughout the trial and at all stages of the case and he could cross-examine all of the witnesses as well as have his attorney subpoena witnesses to testify at trial. He was advised that he had the right to remain silent and not testify and he did not have to call any witnesses. As well, he was told that if he wanted to testify the court would tell the jury that it would be improper for them to consider his silence in any way to determine his guilt. He was also told that by pleading guilty, in order to receive potential reductions for acceptance of responsibility for pleading guilty, he needed to admit his guilt on the offenses charged and understood that he was going to have to admit that he was guilty. He indicated that he understood all of these matters. (R. 125, Change of Plea, Page ID 679-682).

Mr. Stinespring advised the Court that no one had made any promises to him of any kind regarding what his sentence would be. To that, the Court added that there were multiple counts and they were serious charges, pointing out that the first three counts had a minimum term of 15 years for each count and the maximum term of 30 years for each count. The Court added that there were advisory sentencing guidelines, and that the guidelines could end up being higher than the statutory maximums, and if that occurred the Court could stack statutory sentences to come up with a reasonable sentence for all five counts. Mr. Stinespring advised that he had spoken with his attorney regarding how the sentencing guidelines may apply to his case.

The Court provided a lengthy discussion of the guidelines explaining how some potential enhancements could occur for the first three counts (Sexual Exploitation of a Minor) which were covered by USSG §2 G2 .1 and USSG §2G2 .2. The court noted that if a child who had not attained the age of 12 years was involved there may be an increase of four levels to the guidelines or that if the offense involved a minor between 12 up to 16 years of age there may be an increase of two levels to the guidelines. Several other examples were also provided to Mr. Stinespring and he noted that he understood. Additionally, Mr. Stinespring's attorney stated on the record that he and Mr. Stinespring had reviewed these matters. (R. 125, Change of Plea, Page ID 683-689).

26

Mr. Stinespring was advised that the Court could sentence him within the guideline range or below the guideline range but not above the guidelines range in this case because it exceeded the statutory range. He was also informed that 18 USC §3553 requires the court to review the statutory sentencing factors in addition to the guidelines. Those factors were read out to Mr. Stinespring. Restitution was also explained to Mr. Stinespring. The defense attorney noted that Mr. Stinespring believed it to be in his benefit to not take a written plea, but rather entered into an open plea. (Change of Plea, R. 125, Page ID 690-692).

There was a review of the presentence report and Mr. Stinespring was advised that he had the right to have his attorney object if there was anything in the report he disagreed with. He was also told that there was no parole in the federal system and that both sides retain the right to appeal any sentencing determination made by the Court. He advised the court that he understood that. (R. 125, Change of Plea, Page ID 693 - 695).

The Court extensively reviewed the specifics of each charge with Mr. Stinespring. The first three counts involved the use of a camera that took photographs exploiting individual minors. The underlying facts of the charges were read to Mr. Stinespring and he agreed with the facts as read, and agreed that a jury could find the photographs of the naked underage children sexually explicit. Count 4, to which Mr. Stinespring admitted, involved a number of visual depictions of

minors engaging in sexually explicit conduct (approximately 100) that were found on electronic media located Mr. Stinespring's cabin that had been obtained via computer for use on the Internet by Mr. Stinespring. This count was also discussed with Mr. Stinespring.

Count 5 involved Mr. Stinespring sending a complex numerical coded message to his oldest daughter urging her to take responsibility for various charges contained in the indictment against him. He admitted that he constructed the letter and sent it to persuade his oldest daughter to falsely influence her testimony in some way. (R. 125, Change of Plea, Page ID 696 - 722).

Mr. Stinespring pled guilty to all five counts. The Court found that he was competent and noted that his attorney indicated that he and the defendant had been able to communicate through the pendency of the case. The Court added that the complexity and difficulty of the coded letter Stinespring sent to his oldest daughter gave a solid foundation to the finding that Mr. Stinespring was competent and capable of entering an informed plea. Finally, the Court noted that Mr. Stinespring was aware of the nature of the charges and the consequences of the plea from the sentencing perspective and that the plea of guilty was knowing and voluntary, supported by an independent basis in fact, and satisfying the elements of each of the offenses. At the end of the Change of Plea Hearing the court asked Mr. Stinespring whether he understood all the questions he had been asked and

Stinespring answered in the affirmative and added that he had no questions for the

Court. (R. 125, Change of Plea, Page ID 723-724).

The record shows that Mr. Stinespring was fully advised of the

constitutional rights he waived by pleading guilty and that his waiver was valid. "A

guilty plea is valid only if the defendant enters into it intelligently and voluntarily,

factors which may be determined from the totality of the circumstances

surrounding the plea." *Brady v. United States*, 397 US 742, 747 (1970). Based

upon that standard, Mr. Stinespring's guilty plea seems constitutional because

when the record of the guilty plea proceedings is considered, it is sufficient to

establish that Mr. Stinespring was adequately apprised of the constitutional rights

he waived by pleading guilty. He stated he was able to understand and

communicate with his attorney and his attorney agreed. (Supra). He also

understood that he had the option of maintaining a plea of not guilty and going to

trial, but if he pled guilty and the plea was accepted that there would not be a trial

and he would be waving his constitutional rights. Those rights, he acknowledged,

included the right to trial, and the privilege against self-incrimination. The record

reflects that he fully understood the consequences of his guilty plea. It further

supports the Court's finding that his guilty plea and waiver of his constitutional

rights was knowing, voluntary and intelligent. Thus, under the totality of the

circumstances it reflects a valid guilty plea. See, *Brady*, 397 US at 748-49; *Boykin*
395 US at 242-44.

## C. Appellant Could Argue That His Sentence Was Unreasonable

Generally, the Sixth Circuit reviews a district court's sentencing decision for
procedural and substantive reasonableness under an abuse of discretion standard.
*United States v. Cunningham* 669 F. 3d, 723, 728 (6th Cir. 2012).

### 1. Procedural Reasonableness

Procedural reasonableness requires the court to "properly calculate the
guidelines range, treat that range as advisory, consider the sentencing factors in 18
USC §3553 (a), refrain from considering impermissible factors, select the sentence
based on facts that are not clearly erroneous, and adequately explain why it shows
the sentence. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Circuit. 2018).

The guidelines recommendation was a criminal offense level of 49 with a
criminal history of one. US SG, Chapter 5, Part A (Comment n.2), states that 43 is
the maximum criminal offense level permitted by the Guidelines. Even with a
criminal history of one the resulting recommendation is life incarceration.

The defense had two objections to the PSR that could have affected
guidelines calculations. The first objection was to the two level enhancement for

restraining a victim in the course of the offense pursuant to USSG §3A1.3, and the second objection was the two level enhancement for obstruction of justice pursuant to USSG §3C1.1. (R. 126, Sentencing-Court, Page ID #729). Even had objections to both enhancements been upheld this would have resulted in a four level lower offense level, resulting in a 45 offense level. A criminal offense level 45 exceeds USSG Chapter 5, Part A 43 level maximum. (Supra).

Defense counsel agreed that the guideline result would not be changed by the court's ruling on the two objections and the Court noted that Federal Rules of Criminal Procedure 32 (i) (3) (B) states that a ruling is not necessary if the issue does not impact the guidelines. (R. 126, Court, Page ID #733). This was because after all offense level calculations and the acceptance of responsibility reduction of three levels the final offense level was 49. The objections, if granted, would have lowered the criminal offense level to 45. Pursuant to Chapter 5, Part A (comment n.2), in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43. (Supra).

Regarding the restraining a victim in the course of the offense objection, defense counsel did not argue that the statements regarding restraint were not made by the victims but said that they may not have been truthful. He acknowledged he had no evidence to dispute the statements. The probation officer stated that the disputed information had been provided to him. The court overruled the objection,

31

noting that information was proper background which is within the scope of the information the court can consider for sentencing. The court ruled that the information from victims one and two was relevant, citing the relevancy USSG §1B 1.3. The Court overruled the objection with the caveat that even if the objection was sustained it would not make a difference in the guideline range. (Supra). The Court noted that victims 1 and 3 made statements that they were branded while they were being held against their will by the defendant and they were under his care, custody and control and that the conduct was done, in part, to coerce them to ultimately allow him to be able to sexually abuse them. The court also noted that Victim 1 gave a statement that the branding was in punishment for her plan to get out of the house and report the defendant to the police, and Mr. Stinespring's actions were designed to ensure that she would not leave and notify the police. This was within the scope of relevant conduct under USSG §1B13 of the guidelines. Since of court can consider all acts committed by a defendant that occur during the commission of the offenses, in preparation for those offenses, and all harm that may have resulted from his actions, the court ruled that this conduct was sufficient to warrant the two level restraint enhancement pursuant to USSG §3A 1.3. (R. 126, Sentencing-Court Page ID #729-739).

Regarding the USSG §3C 1.1 enhancement, the Court ruled that the coded letter which served as the basis for Count 5 was defendant's attempt to have

32

Victim 3 lie in an effort to exculpate him, which was a blatant obstruction

enhancement under the guidelines. Defense counsel agreed that if the letter had

succeeded in convincing Victim 3 to exculpate Mr. Stinespring and inculpate her it

would have materially affected the case. Counsel did not contest the facts that Mr.

Stinespring had sent a coded letter to the victim. The Court then overruled the

second objection. (Document #126, Sentencing, Page ID #728-740).


The Guidelines calculation used the 2021 Guideline Manual. Counts three

and four were each grouped for guideline calculation purposes because they

embodied conduct that was treated as a specific offense characteristic in, or other

adjustment to, the guideline applicable to another of the counts. See USSG §3D 1.2

(c). The PSR calculations were as follows:

The base offense level for Counts 1-3 was 32. (USSG §2 G2 .1). For Count

1 (Victim 2), a specific offense characteristic applied, in that the youngest child

had not attained the age of 12. (USSG §2 G2 .1 (b) (1) (A). This increased the base

offense level by 4 levels. At the time of the offense, minor Victim 2 was in the

custody of the defendant, who was a parent. This added two additional levels

pursuant to USSG §2 G2 .1 (b) (5). An additional special offense characteristic

involved the commission of a sexual act or sexual contact this increased the total

by two levels. (US SG §2 G2 .1 (b) (2) (A). There was also an adjustment for obstruction of justice due to Mr. Stinespring willfully obstructing or impeding the administration of justice with respect to the investigation, prosecution or sentencing. Two levels were therefore added. (USSG §3C 1.1). Thus, the adjusted offense level for Count 1 (Victim 2) was 42. This offense level was the highest of the offenses. All other Count 1 victims resulted in an offense level of 40 and therefore the Count 1 (Victim 2) offense total was utilized for grouping purposes. (Infra).

The Guidelines level for Count 1A (Victim 3) involved a similar analyses but a different age, and resulted in an offense level of 40. Count 2 (Victim 1)

For Count2 (Victim 1) the same analysis occurred with the exception of at the time of the offense minor Victim 3 was also a different age. However, she was tied to the back of the truck and branded, and this resulted in an additional two level increase pursuant to USSG §3A 1.3. The adjusted offense level for this victim was also 40.

Count 2 (Victim 2) also involved special offense characteristics which increased the base level of 32. At the time of the offense Minor Victim1 was between the age of 12 and 16. This resulted in an increase of 2 levels pursuant to USSG §2 G2 .1 (b) (1) (B). Additionally, the Special Offense Characteristics of

being a parent and of tying the victim to the back of a truck and branding the victim applied as above, resulting in an additional two levels for each. Ultimately, the offense level was 40.

Count 3 (Victim 1) added to the base of 32 Specific Offense Characteristics such as that Minor victim 2 had not attained 12 years of age (+4) and at the time of the offense, minor Victim 2 was in the custody of the defendant, a parent. +2 (USSG §2G2.1(b)(5) and an adjustment for obstruction of justice +2. The Adjusted Offense Level (subtotal) was 40.

Count 3A (Victim 2) also resulted in an adjusted offense level 40, increasing the base level for victim between age 12 and 16 (+4), custody of parent (+2), tied to the back of a truck and branded (+2) and obstruction of justice (+2).

Count 3A (Victim2) was an adjusted offense level of 40. This involved a minor victim who had not attained the age of 12 (+4) custody of parent (+2) and obstruction of justice (+2).

Count 4 was grouped for guideline calculation purposes because it embodied conduct that was treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the count(s). USSG §3D1.2(c).

Count 5 was grouped for guideline calculation purposes because it embodied conduct that was treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the count(s). USSG §3D1.2(c).

There was a multiple count adjustment pursuant to USG §3D 1.4 (a), (b) and (c). One unit was assigned to the group with the highest offense level, and one additional unit was assigned for each group that was equally serious. Thus, Count 1 with an adjusted offense level of 42 received one unit, and the other counts with adjusted offense levels of 40 also received one unit. The total number of units was 6. Pursuant to the table at USSG §3D 1.4, the offense level was increased pursuant to the number of units assigned by the amount indicated in the table (+5). Adding this to the offense with the greater number of offense levels (42) resulted in an offense level of 47.

In addition, there was a USSG Chapter 4 Enhancement. The conviction offense was a covered sex crime. Neither career offender nor USSG §4B 1.5 (a) applied. The defendant engaged in a pattern of activity of prohibited sexual conduct. Therefore, he was a repeat and dangerous sex offender against minors and the offense level was increased by 5; adding this to the prior 47 level resulted in a 52 offense level score. Because Mr. Stinespring accepted responsibility, pursuant to USSG §3E1.1 (a), the offense level was reduced by three levels, resulting in a 49 offense level.

The Total Offense Level was tempered, pursuant to USSG Chapter 5, Part A (Comment 2) which states that where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43. Mr. Stinespring's Criminal History was I. This resulted in a guideline imprisonment range of life. The statutorily authorized maximum sentences were less than the applicable guideline range. (USSG §5G 1.1 (a)). (Document 112, PSR, Page ID #544-549). (Sealed).

The statutory provisions were as follows: Counts 1-3 each had a minimum term of imprisonment of 15 years and a maximum term of 30 years pursuant to 18 USC §2251 (e). Count Four had a maximum term of imprisonment of 20 years pursuant to 18 USC §2252 (b) (2). Count five also had a maximum term of imprisonment of 20 years pursuant to 18 USC §1512 (b) (1). Counts one through three imposed a term of supervised release of five years up to life, pursuant to 18 USC §3583(k). Count 4 required a supervised release of five years to life. (18 USC §3583 (k). Count 5 permitted a term of supervised release of not more than three years pursuant to 18 USC 3583 (b) (2).

*Rayyan* (supra) also requires a Court consider the sentencing factors in 18 USC §3553 (a). The Court extensively reviewed the statute, noting that it had a list of factors that were set forth in 18 USC §3553 (a). Regarding unwarranted sentencing disparity among similarly situated defendants the Court stated that no

case it had seen was even close to this one not involving a death. Additionally, the nature and circumstances were as bad as the Court had seen. The court referred to the victim statements, the victim statements in Court that morning, the letters and statements that they submitted prior to the sentencing, all referring to substantial and reprehensible abuse doled out by Mr. Stinespring. Again referring to the sentencing factors individually the Court stated that considering all of the 18 USC §3553 (a) factors, the nature and circumstances of the offense, the seriousness of the offense, the fact that the defendant tried to obstruct justice by changing the mind of one particular victim to see if she would take the fall for the crimes, this case may have been be the worst case the court had seen where a death had not been involved and the sentence would reflect that (R. 126, Sentencing Hearing, Page ID #757-764).

The court sentenced Mr. Stinespring to imprisonment for a term of 360 months on each of counts one, two, and three, those counts to run consecutively; 240 months on Count 4 to run concurrently and 120 months on Count 5, that count to run consecutively to all other counts, for a total sentence of 1200 months. ( R. 126 Page ID #758-,762, 768).

Where the total guideline offense level is 43 or higher, the guidelines range of imprisonment is life, regardless of the defendant's criminal history category. The guidelines range of life was properly calculated. (Supra). Furthermore, the

Court treated the guidelines as advisory, considered the 18 USC §3553 (a) factors, and adequately explained the reason for the sentence.

There was no arguable issue regarding the procedural reasonableness of Stinespring's sentence. The final Guidelines total was far above the level at which a life sentence may be applied. Pursuant to *Rayyan* (supra) a Court is required to properly calculate the guidelines range and treat that range as advisory. The ultimate range was above the guidelines maximum and the statutory range was properly calculated.

## 2. Substantive Reasonableness

The Sixth Circuit reviews the substantive reasonableness of a district court's sentence for abuse of discretion. *United States v. Greco,* 734 F.3d 441, 444 (6th Cir. 2013). A substantive reasonableness challenge focuses on the length of the sentence itself, *United States v. Clayton,* 937 F.3d 630, 643 (6th Cir. 2019), asking if the sentence is "too long (if a defendant appeals) or too short (if the government appeals)." *United States v. Rayyan,* 885 F.3d 436, 442, (6th Cir. 2018) . Because challenges to the reasonableness of a sentence are reviewed for abuse of discretion, a court grants relief only for an error of law, a clearly erroneous finding of fact, or where the court is otherwise left with the "definite and firm conviction" that the district court clearly erred. See *United States v. Hymes,* 19 F.4th 928, 932–33 (6th

Cir. 2021). Unpreserved procedural challenges are reviewed for plain error, requiring an obvious error that would result in a miscarriage of justice without reversal. *Id*. at 933. Here, such a waiver occurred. When the Court inquired as to whether either side had any legal objection to the sentence pronounced that had not been previously raised, or a particular 18 U.S.C. §3553 (a) factor that had not been adequately addressed, defense counsel merely requested that Mr. Stinespring be assigned a certain prison location, thus waiving any Guidelines issues aside from the two substantive objections made by defense (Supra). (R. 126, Court, Defense-Sentencing, Page ID #767).

A review of the Guidelines (see above argument) reveals that the sentence recommendation was life.  No guideline offense level can exceed the limit placed by statute on the counts of conviction. When guidelines computations exceed the statute maximums, the statute maximums are utilized Thus, Mr. Stinespring's sentence was calculated and based upon the statutory constraints.

The statutory provisions were as follows: Counts 1-3 each had a minimum term of imprisonment of 15 years and a maximum term of 30 years pursuant to 18 USC §2251 (e). Mr. Stinespring was sentenced to 360 months total, or 30 years for each offense. Count Four had a maximum term of imprisonment of 20 years pursuant to 18 USC §2252 (b) (2). For this Count he was sentenced to 240 months, or 20 years. Count Five also had a maximum term of imprisonment of 20 years

pursuant to 18 USC §1512 (b) (1), and the sentence was 120 months, or 10 years. (R. 126, Court-Sentencing Page ID #762)

Substantive reasonableness focuses on whether a "sentence is too long (if the defendant appeals) or too short (if the government appeals)." *Id* at 442. Sentences that fall within the applicable guidelines range are afforded a presumption of substantive reasonableness. See *United States v. Baker*, 559 F. 443, 448 (6th Cir. 2009). In this instance the Sentencing Guidelines range was life and therefore statutory range was used. The sentence did not exceed, and fell within, the statutory range. Several times the Court mentioned during sentencing that outside of crimes that resulted in death, this was the worst case ever before the court. The conduct involved not only sexual offenses but also a stun gun to shock a child while forcing the child to stand and water (supra) and other conduct. Regarding unwarranted sentencing disparity among similarly situated defendants the court stated that no case was even close to this one, not involving a death. (R. 126, Page ID #757-764).

Further, there was no preservation of error (Aside from the two enhancement objections, supra) even had there been error. (Supra). There was no error of law, or clearly erroneous finding of fact, and there was no abuse of discretion. *(Hymes*, supra at 932-933).

41

Mr. Stinespring's sentence is procedurally and substantively reasonable. At sentencing, the District Court considered the parties arguments regarding an appropriate sentence, properly calculated the guidelines, and properly calculated the statutory requirements. There is no error in the sentencing.

## D. APPELLANT COULD ARGUE INEFFECTIVE ASSISTANCE OF COUNSEL.

To prevail on a claim of ineffective assistance of counsel pursuant to 18 USC §2255 the petitioner must show deficient performance and prejudice. *Strickland v. Washington*, 466 US 668, 687 (1984).

"[A] defendant cannot typically raise claims of ineffective assistance of counsel on direct appeal because the record is not developed for the purpose of litigating an ineffective assistance claim and it is often incomplete." *United States v. Walden*, 625 F. 3d 961, 967 (6th Cir. 2010) (citing *Massaro v. United States*, 538 US 500, 504-05 (2003)). There is no error apparent from the existing record. Any ineffective assistance claims are premature and should be raised in a motion to vacate under 28 USC §2255. See *United States v. Lopez- Medina*, 460 1F. 3d 724, 737 (6th Cir. 2006).

## E. APPELLANT COULD ARGUE THAT HE WAS NOT COMPETENT

### 1.  Standard of review

"A defendant's competence is a question of fact, which we review for clear error." *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (internal quotations omitted) (quoting *Harries v. Bell,* 417 F.3d 631, 635 (6th Cir. 2005)). Under a clear error standard, whether a reviewing court would reach a different conclusion regarding competency based on this evidence is immaterial. See *Dubrule*, 822 F.3d at 875. A district court's factual conclusions are reversed only if they are "against the clear weight of the evidence" or if "upon review of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id*. (quoting *United States v. Grubbs*, 773 F.3d 726, 731 (6th Cir. 2014)). "After all, through personal observation, the trial judge 'will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.'" *United States v. Hood*, 827 Fed.Appx. 524, 529 (6th Cir. 2020) (*quoting Indiana v. Edwards*, 554 U.S. 164, 177 (2008)).

### 2. Raising the issue

During a pretrial status conference hearing the defense raised an issue of competency. The Motion for Order of Competency to Stand Trial was granted by

the District Court. (Document #74, Status Conference, Page ID #401). There was a

psychiatric evaluation conducted. The evaluation determined the following:

Based on the available information, in the opinion of this evaluator, Mr.
Stinespring is not currently suffering from a mental disease or defect rendering him
mentally incompetent to the extent he is unable to understand the nature and
consequences of the proceedings against him or properly assist in his defense. He
presented with a reasonable degree of factual and rational understanding of the
legal proceedings and has a sufficient ability to consult with counsel should he
choose. Thus, in the opinion of this evaluator, Mr. Stinespring is currently
competent to proceed.

 (Forensic Psychological Report Competency Report Pursuant to Title 18 USC

§4241 (b), R. 80, Page ID #425 (Sealed)).


## 2.  Discussion

### A. **A plea of guilt waives nonjurisdictional issues unless they are preserved.**

"'[A] voluntary and unconditional guilty plea waives all non-jurisdictional

defects in the proceedings*,' United States v. Ormsby,* 252 F.3d 844, 848 (6th Cir.

2001. Preserving the right to appeal any non-jurisdictional pre-plea motion is

difficult because a guilty plea generally waives that right unless the plea is

conditional. *United States v. Bell*, 350 F.3d 534, 535-36 (6th Cir. 2003) (citing

*United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001)). In order to retain the

right to appeal a pre plea motion, "there must be: 1) a conditional guilty plea in

writing; 2) that reserves the right to appeal a specified pre-trial motion; and 3) that

evidences the government's consent." (*Bell*, supra at 534). Mr. Stinespring did not have a plea agreement and had nothing in writing if he intended a conditional plea. Thus, he did not satisfy any of the elements needed to preserve the right to appeal the district court's denial of the motion regarding competence. Mr. Stinespring's motion to suppress was denied prior to the time he entered his plea which, did not preserve this issue. The competency argument is waived for non-preservation.

## B. The Competency Issue was Explicitly Waived during the Change of Plea Hearing

During the Change of Plea Hearing there was a discussion of the competency of Mr. Stinespring. To that issue, Stinespring stated that he was in the right state of mind. His attorney elaborated, stating that he had met with Mr. Stinespring quite a few times since the competency hearing and that Mr. Stinespring was competent, rational and he understood what he was doing at the change of plea hearing. The United States added that it thought Mr. Stinespring was definitely competent. (Change of Plea Hearing, R. 125, Page ID #67-71).

The Court commented that based upon the prior report from the Bureau Prisons as well as the fact that Mr. Stinespring's attorney stated he had been able to communicate with Stinespring throughout the case that Mr. Stinespring was competent. The Court ruled that Mr. Stinespring was aware of the nature of the

charges and consequences of the plea from the sentencing perspective. (R. 125, Change of Plea Hearing, Page ID #722).

A waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). The Sixth Circuit generally declines to consider waived arguments on appeal. "*United States v. Denkins*, 367 F.3d 537, 543-44 (6th Cir. 2004).

## C. Evidence of Competency Was Uncontroverted

At the competency hearing counsel for Stinespring stated that he had no evidence to present and that he did not challenge the forensic psychological report regarding competency. (R. 123, Page ID #642). The Court found the defendant competent to stand trial based upon the evaluation, which found that Mr. Stinespring was not presently suffering from mental illness or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (R. #79, Competency Ruling, Page ID #415; R. 123, Forensic Psychological Report, Page ID #645).

Competency determinations are reviewed for clear error, and Mr. Stinespring did not show that the district court committed clear error in finding that

he was competent. *United States v. McCarty*, 628 F.3d 284, 294 n.1 (6th Cir.

2010).

## Conclusion

For the foregoing reasons, this case raises no non-frivolous issues for

consideration by this Court on appeal. Therefore, counsel's motion, pursuant to

*Anders v. California*, 368 US 738 (1967) and 6 Cir. R. 101 (f) should be granted.

 /s/ Paul Neel

8203 Flicker Place

Louisville, KY 40214

## Statement of compliance with FRAP 32(a) (7)

I certify that this brief is in compliance with FRAP 32(a) (7) regarding the

length of the principal brief. This brief contains 12,431 words.

## Certificate of Service

I hereby certify that on March 23, 2023, I electronically filed the foregoing
brief with the Clerk of this Court by using the ECF system. I also certify that on
March 23, 2023,  the foregoing brief was served on the following counsel of record
at their email address through ECF:

Charles P. Wisdom Jr.
Assistant US Attorney
Eastern District of Kentucky,
960 W. Vine St., Suite 300
Eastern District of Kentucky
Firm: 859-233-2661
260 W. Vine Street
Suite 300
Lexington, KY 40507-1612

Erin M. Roth
Direct: 859-685-4872
[COR NTC Government]
Office of the U.S. Attorney
Eastern District of Kentucky
Firm: 859-233-2661
260 W. Vine Street
Suite 300
Lexington, KY 40507-1612


I further certify that a copy of this brief was mailed on March 23, 2023 by depositing it in a United States Postal Service mailbox with first class postage prepaid and addressed to Ronald Stinespring, U.S.M. No. 26884-509, Boyd County Detention Center, P.O. Box 455, Catlettsburg, KY 41129.


/s/ Paul Neel



## APPELLANT'S DESIGNATION OF DISTRICT COURT DOCUMENTS


Pursuant to Sixth Circuit Rule 30 (b) the following filings from the District Court's record are designated as relevant.


| DESCRIPT/ENTRY | DATE FILED | RECORD NO. | PAGE ID # |
| --- | --- | --- | --- |
| Second Superseding Indictment | May 5, 2022 | 81 | 426-433 |
| Change of Plea | January 20, 2023 | 125 | 667-724 |
| Transcript of Sentencing | January 20, 2023 | 126 | 729-40, 757-764, 768 |
| Competency Hearing | January 20, 2023 | 123 | 642, 645 |

| | | | |
|---|---|---|---|
| Psychological Competency | April 11, 2022 | 80 | 425 |
| Competency ruling | April 11, 2022 | 79 | 415 |
| Suppression Hearing | May 30, 2021 | 31 | 144-155, 74-93, 201 |
| PSR (Sealed) | November 1, 2022 | 112 | 544-549 |
| Amended Judgment | October 21, 2022 | 108 | 509-517 |
| Notice of Appeal | October 28, 2022 | 110 | 518-521 |